| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL II | | |
|---|---|---|
| CARLOS JAVIER RODRÍGUEZ ALVARADO<br><br>Parte Peticionaria<br><br>v.<br><br>CRISTINA CAMPO JUELLE<br><br>Parte Recurrida | TA2026CE00248 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: BY2025RF00183<br><br>Sobre: Divorcio, Custodia, Alimentos |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

## **R E S O L U C I Ó N**

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Comparece ante *nos,* Carlos Javier Rodríguez Alvarado (Rodríguez Alvarado o peticionario) y nos solicita que revisemos una Orden emitida el 2 de febrero de 2026 y notificada el 3 de febrero de 2026, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Carolina. Mediante dicho dictamen, el foro primario ordenó a la Unidad Social de Relaciones de Familia y Asuntos de Menores a que realice un estudio social sobre custodia en el término de noventa (90) días.

Por los fundamentos antes expuestos, se *deniega* la expedición del auto de *certiorari.*

## **I.**

El 4 de febrero de 2026, Rodríguez Alvarado presentó una *Demanda* de divorcio en contra de Cristina Campo Juelle (Campo Juelle o recurrida). A grandes rasgos, solicitó la disolución del vínculo matrimonial habido entre las partes y la custodia compartida del menor SARC. Oportunamente, el 26 de febrero de 2026, Campo Juelle presentó una *Contestación a Demanda*

mediante la cual solicitó la custodia monoparental y que se establecieran relaciones filiales en contexto terapéutico. Ese mismo día, el TPI emitió una *Orden* mediante la cual refirió el caso a la Unidad de Trabajo Social para estudio y recomendación sobre custodia, custodia compartida y relaciones filiales.

Posteriormente, mediante *Orden* del 20 de marzo de 2025, el foro primario dejó sin efecto el referido a la Unidad de Trabajo Social, ya que el menor estaba en terapia con la participación activa de ambos padres. El 25 de marzo de 2025, el Dr. Héctor L. Coca Soto presentó una *Moción para Someter Documentos* al cual acompañó un Informe de Progreso. Entretanto, el 22 de abril de 2025, el peticionario presentó una *Moción en Cumplimiento de Orden, Informando Impugnación de Informe e Informando Perito*. Por su parte, el 23 de abril de 2025, la parte recurrida presentó una *Oposición a Moción en Cumplimiento de Orden, Informando Impugnación de Informe e Informando Perito*.

El 24 de abril de 2025, el TPI emitió una *Orden* mediante la cual refirió nuevamente el caso para estudio a la Unidad de Trabajo Social. Cónsono con esto, ese mismo día, el foro primario emitió una segunda *Orden* mediante la cual ordenó a la Unidad de Trabajo Social a que realizara un estudio social sobre custodia, custodia compartida y relaciones filiales. Así las cosas, el 30 de julio de 2025, la Trabajadora Social, Emily Abreu Sibilia, de la Unidad de Trabajo Social presentó su *Informe Social*. Allí, la Trabajadora Social recomendó una custodia compartida y estableció un plan para la misma.

Acto seguido, el 12 de agosto de 2025, Campo Juelle presentó una *Moción en Cumplimiento y Anunciando Impugnación de Informe Social*. El 28 de agosto de 2025, a solicitud de la parte peticionaria, el foro primario emitió una *Resolución* mediante la cual acogió de forma provisional las recomendaciones del *Informe Social* y

estableció una custodia compartida. Subsiguientemente, el 3 de octubre de 2025, la recurrida presentó una *Moción Informativa Sobre Desistimiento de Impugnación de Informe*. Consecuentemente, el 16 de octubre de 2025, las partes presentaron una *Moción Conjunta Anunciando Acuerdos Entre Las Partes* mediante la cual, entre otras cosas, las partes establecieron un plan de custodia compartida entre ambos progenitores.

En vista de ello, el 22 de octubre de 2025, el TPI emitió una *Resolución* mediante la cual impartió su aprobación a los acuerdos entre las partes con relación a la custodia compartida del menor SARC. El 16 de enero de 2026, la parte recurrida presentó una *Moción Informativa y en Solicitud de Custodia Monoparental*. En consecuencia, el 21 de enero de 2026, el foro primario emitió una *Orden* mediante la cual apercibió a las partes a dar fiel cumplimiento a la *Resolución* del 22 de octubre de 2025, so pena de suspender las relaciones filiales de forma sumaria a la parte que incumpliera. Además, ordenó a las partes a abstenerse de hacer comentarios delante del menor que, de ser reportados a las autoridades, podían ser constitutivos de maltrato de menores. Ese mismo día, la parte peticionaria presentó una *Moción Exponiendo Posición del Padre Respecto a Moción de Custodia*.

Luego de varios incidentes procesales, el 2 de febrero de 2026, Campo Juelle presentó una *Moción en Solicitud de Custodia Monoparental*. En desacuerdo, el 3 de febrero de 2026, Rodríguez Alvarado presentó una *Oposición a Solicitud de Custodia Monoparental*. El 2 de febrero de 2026, notificada el 3 de febrero de 2026, el TPI emitió una *Orden a la Unidad Social.* Mediante esta, el foro primario ordenó realizar un estudio social sobre custodia. Inconforme, el 6 de febrero de 2026, la parte peticionaria presentó una *Solicitud de Reconsideración [...].* El 7 de febrero de 2026,

notificada el 9 de febrero de 2026, el TPI emitió una *Orden* mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración.

Inconforme aun, el 27 de febrero de 2026, la parte peticionaria compareció ante *nos* mediante un recurso de *Certiorari* y alegó la comisión del siguiente error:

> **PRIMER ERROR: Erró el Tribunal de Primera Instancia al ordenar un nuevo referido a la Unidad de Trabajo Social y al declarar No Ha Lugar la reconsideración, a pesar de que apenas habían transcurrido aproximadamente cuatro meses desde que se acogió mediante Sentencia final y firme un informe social exhaustivo que recomendó la custodia compartida, aceptado y estipulado por las partes, sin que mediara cambio sustancial ni circunstancia extraordinaria que ameritara una intervención innecesaria y onerosa en la vida del menor y su familia, en contravención con el principio de mejor bienestar del menor y evitar intervenciones innecesarias.**

Examinado el recurso ante nuestra consideración, el 6 de marzo de 2026, emitimos una *Resolución* mediante la cual le concedimos un término de diez (10) días a la parte recurrida para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. En cumplimiento con nuestra directriz, el 12 de marzo de 2026, Campo Juarbe presentó una *Oposición a Certiorari*. Contando con el beneficio de la posición de todas las partes, procedemos a resolver.

## II.

### A. *Certiorari*

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Pueblo v. Díaz de León,* 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González*

*v. Zaragoza Meléndez, supra*. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG, supra*. Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra*.

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. Véase, *Scotiabank v. ZAF Corp.,* 202 DPR 478 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación*, 165 DPR 311 (2005); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649 (2000); *Lluch v. España Service Sta.*, 117 DPR 729 (1986).

6

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra*. En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009); *García v. Padró*, 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado

al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* Véase, además, *Pueblo v. Rivera Santiago, supra*; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

**III.**

Habida cuenta de que el recurso ante *nos* se trata de un *certiorari*, este tribunal intermedio debe determinar, como cuestión de umbral, si procede su expedición.

En el caso de autos, la parte peticionaria planteó que erró el TPI al ordenar un nuevo referido a la Unidad de Trabajo Social y al declarar *No Ha Lugar* la solicitud de reconsideración, a pesar de que solo habían transcurrido cuatro (4) meses desde que se acogió mediante *Resolución* un *Informe Social* exhaustivo que recomendó la custodia compartida. Sostuvo que dicho *Informe Social* fue aceptado y estipulado por las partes, sin que mediara cambio sustancial ni circunstancia extraordinaria que ameritara una intervención innecesaria y onerosa en la vida del menor y su familia, en contravención con el principio de mejor bienestar del menor y evitar intervenciones innecesarias.

Como es sabido, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* No debemos obviar que, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago, supra.*

Así pues, puntualizamos, que el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior

puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al., supra.* A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones del foro primario, de cuyas determinaciones se presume su corrección.

Tras un análisis cuidadoso del recurso presentado por la parte peticionaria, y luego de una revisión de la totalidad del expediente ante *nos*, es nuestra apreciación que no se configuran ninguna de las excepciones que justificaría la expedición del auto de *certiorari* al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.* Así, los fundamentos aducidos en el recurso presentado, no nos mueven a activar nuestra función discrecional en el caso de epígrafe. Esto, pues no nos encontramos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. Tampoco la parte peticionaria nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un fracaso de la justicia. Debemos recordar que las determinaciones de custodia no constituyen cosa juzgada, ya que pueden ser modificadas de ocurrir un cambio en las circunstancias que así lo justifique. *Figueroa v. Del Rosario*, 147 DPR 121, 129 (1998).

Por lo tanto, resolvemos denegar el *certiorari* solicitado, pues no identificamos fundamentos jurídicos que nos motiven a expedir el mismo en esta etapa de los procedimientos.

**IV.**

Por los fundamentos antes expuestos, *denegamos* la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones